IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

ABIRA MEDICAL LABORATORIES, LLC,

Plaintiff,

vs.

MUTUAL OF OMAHA INSURANCE
COMPANY, ABC COMPANIES 1-100, and
JOHN DOES 1-100,

Defendants.

**8:24CV194**

**MEMORANDUM AND ORDER
REGARDING PLAINTIFF'S CROSS-
MOTION TO AMEND**

Plaintiff Abira Medical Laboratories, LLC, d/b/a Genesis Diagnostics, (Abira) brought this action alleging that defendants Mutual of Omaha Insurance Company, d/b/a Mutual of Omaha, and its unnamed affiliates (collectively, Mutual of Omaha) "intentionally and unlawfully denied benefits to their insureds/claimants, by failing to pay [Abira] for laboratory testing of specimen, including but not limited to COVID-19 tests, which Abira performed for the insureds/claimants." Filing 12 at 1 (¶ 1). In proceedings before this case was transferred to this District, a United States District Judge for the District of New Jersey observed, "This is one of more than forty cases that Plaintiff Abira Medical Laboratories, LLC, has filed in the United States District Court for the District of New Jersey or had removed here from the Superior Court of New Jersey since June 2023." Filing 30 at 1.

After this case was transferred to this District, Mutual of Omaha filed a Motion to Dismiss or Strike pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f). Filing 46. Abira responded by filing a Cross-Motion to [File] Second Amendment to the Complaint (Cross-Motion to Amend), which is now before the Court. Filing 50. Abira also filed two identical

1

Briefs in Opposition to Defendant's Motion to Dismiss or Strike and In Support of Plaintiff's Cross-Motion for Leave to Amend the Complaint. Filing 51; Filing 52.[1] By Text Order, the Court held in abeyance further briefing on Mutual of Omaha's Motion to Dismiss or Strike until the Court rules on Abira's Cross-Motion to Amend. Filing 53. Briefing on the Cross-Motion to Amend is now complete, and for the reasons stated below, the Cross-Motion to Amend is denied.

## I.   INTRODUCTION

### A.  Factual Background

The parties' briefing focuses on the viability of the claims as asserted in the proposed Second Amended Complaint, Filing 50-1 at 4–19, with little reference to the claims as previously asserted in the Amended Complaint, Filing 12. *See* Filing 51 at 5; Filing 55 at 3. Consequently, the Court finds it appropriate to draw the factual background pertinent to the Cross-Motion to Amend from Abira's proposed Second Amended Complaint, rather than from the Amended Complaint. The Court will take as true pertinent non-conclusory factual allegations. *See Mt. Hawley Ins. Co. v. City of Richmond Heights, Missouri*, 92 F.4th 763, 769 (8th Cir. 2024) ("An amendment is futile if the amended claim could not withstand a motion to dismiss under Rule 12(b)(6)." (quoting *Hillesheim v. Myron's Cards & Gifts, Inc*., 897 F.3d 953, 955 (8th Cir. 2018)); *Bauer v. AGA Serv. Co*., 25 F.4th 587, 589 (8th Cir. 2022) (explaining that a court considers nonconclusory allegations as true for the purposes of ruling on a motion to dismiss pursuant to Rule 12(b)(6)).

Plaintiff Abira is a New Jersey limited liability company that held a medical laboratory testing license issued by the Commonwealth of Pennsylvania. Filing 50-1 at 6 (¶ 6). Abira

---

[1] The Court will cite only to the first such brief in this Memorandum and Order.

maintained its principal place of business in Langhorne, Pennsylvania. Filing 50-1 at 6 (¶ 6). Abira was at all relevant times an out-of-network provider of laboratory testing services to defendant Mutual of Omaha's subscribers/members. Filing 50-1 at 6 (¶ 6). Mutual of Omaha (with its unnamed affiliates) is a health insurance company and/or performs health services. Filing 50-1 at 6–7 (¶ 7). Mutual of Omaha is "registered" in the State of Nebraska. Filing 50-1 at 7 (¶ 7).

More specifically, Abira "performed clinical laboratory, pharmacy, genetics, addiction rehabilitation, and COVID-19 testing services on specimens submitted by medical service providers, on behalf of Defendant's subscribers/members, for numerous patients located throughout the United States." Filing 50-1 at 7 (¶ 8). Abira identifies these services as Laboratory Testing Services. Filing 50-1 at 7 (¶ 8). Requisitions for Laboratory Testing Services submitted on behalf of Mutual of Omaha's insureds contained the following assignment:

> I hereby assign all rights and benefits under my health plan and direct payments be made to Genesis Diagnostics for laboratory services furnished to me by Genesis Diagnostics. I irrevocably designate authorize and appoint Genesis Diagnostics or its assigned affiliates as my true and lawful attorney-in-fact for the purpose of submitting my claims and pursuing any request, disclosure, appeal, litigation or other remedies in accordance with the benefits and rights under my health plan and in accordance with any federal or state laws[.] If my health plan fails to abide by my authorization and makes payment directly to me, I agree to endorse the insurance check and forward it to Genesis Diagnostics immediately upon receipt. I hereby authorize Genesis Diagnostics or its assigned affiliates to contact me for billing or payment purposes by phone, text message, or email with the contact information that I have provided to Genesis Diagnostics, in compliance with federal and state laws.

Filing 50-1 at 7–8 (¶ 10). Abira alleges that this assignment "created contractual obligations on [the] part of [Mutual of Omaha] to pay for the Laboratory Testing Services that were provided by [Abira] to [Mutual of Omaha's] insureds/members/subscribers." Filing 50-1 at 7 (¶ 9); *see also*

Filing 50-1 at 8 (¶ 12) (reiterating that "[b]y virtue of the patients' execution(s) of their respective assignment . . . contractual obligations arose between [Abira] and [Mutual of Omaha]. . . ."). This allegation is of course a legal conclusion that the Court is not required to take as true. *See Bauer*, 25 F.4th at 589. Exhibit 1 to the proposed Second Amended Complaint is a spreadsheet setting out the patients who were rendered Laboratory Testing Services—albeit with the names blacked out—the dates of service, the amount billed, and the patients' "ascension numbers." Filing 50-1 at 8 (¶ 11); Filing 50-1 at 19 (Exhibit 1).

Abira "has come to learn [that] [Mutual of Omaha]—over an extended period of time— blatantly disregarded, among other of its duties, express obligations to pay [Abira] for services rendered." Filing 50-1 at 9 (¶ 12). The proposed Second Amended Complaint states,

> 13.     Indeed, it has become apparent that Defendant engaged in a long campaign designed to deprive Plaintiff of thousands of dollars it is rightfully owed for services Plaintiff rendered to Defendant's subscribers and/or members. To advance this campaign, Defendant repeatedly either failed to respond at all to properly submitted claims or fabricated some other pretextual basis to improperly refuse to make payment to Plaintiff.

> 14.     By way of example only and without limitation, Defendant used the following contrived and meritless reasons for refusing and neglecting to properly process a myriad of Plaintiff's claims for payment: (i) lack of adequate claim information provided by Plaintiff; (ii) untimely filing of claims; and (iii) lack of coverage by the subscriber/member for the services provided.

Filing 50-1 at 9 (¶¶ 13–14). Abira alleges that Mutual of Omaha's "refusal to properly process and pay" Abira "constitutes a material breach of [Mutual of Omaha's] payment obligations." Filing 50-1 at 9 (¶ 15). Of course, this last allegation is also a legal conclusion that the Court need not take as true. *See Bauer*, 25 F.4th at 589.

**B.  Procedural Background**

Abira originally filed this action in the Superior Court of New Jersey, Mercer County, Law Division–Civil Part, on June 12, 2023. Filing 1 at 8. Mutual of Omaha removed this action to the United States District Court for the District of New Jersey on July 25, 2023, based on diversity and federal question jurisdiction pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1331, respectively. Filing 1 at 2. After removing the case, Mutual of Omaha filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) on August 16, 2023. Filing 7. The New Jersey District Court "terminate[d]" Mutual of Omaha's Motion to Dismiss pending the filing of Abira's anticipated Amended Complaint. Filing 11. On September 22, 2023, the deadline for doing so, Abira filed its Amended Complaint. Filing 12. Mutual of Omaha filed its Motion to Dismiss as to the Amended Complaint on October 19, 2023. Filing 15. In its supporting brief, Mutual of Omaha explained that it was again seeking dismissal pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). Filing 16 at 17–21.

Eventually, on May 29, 2024, a judge of the New Jersey District Court filed an Opinion determining that the New Jersey District Court lacked specific personal jurisdiction over Mutual of Omaha. Filing 30 at 10–11. The judge determined that transfer to the District of Nebraska rather than dismissal was appropriate. Filing 30 at 11. Consequently, the judge granted in part and denied in part Mutual of Omaha's Motion to Dismiss the Amended Complaint without reaching the Rule 12(b)(6) arguments that Abira's claims fail as a matter of law. Filing 30 at 13 and n.7. In a separate Order & Judgment, the New Jersey District Court directed the Clerk of Court to transfer this action to this District pursuant to 28 U.S.C. § 1631. Filing 31 at 1.

Upon transfer of the case to this District, a magistrate judge set a deadline of June 21, 2024, for Mutual of Omaha to file an answer or other responsive pleading. Filing 39. On June 13, 2024, Mutual of Omaha filed a Motion to Dismiss or Strike pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f). Filing 46. At the deadline to respond to the Motion to Dismiss, Abira filed the Cross-Motion to Amend now before the Court. Filing 50. Abira attached to its Cross-Motion to Amend a copy of the proposed Second Amended Complaint. Filing 50-1 at 4–19.

Abira's proposed Second Amended Complaint describes the nature of this action as follows:

> 1.    This is a breach of contract action. Defendant refused to pay Plaintiff for laboratory testing services rendered to multiple members/subscribers insured by Defendant. The plaintiff will be seeking actual damages of $108,500, plus punitive damages, interest, and costs of the suit, including attorney's fees.

Filing 50-1 at 4–5 (¶ 1). Although Abira identifies this action as "a breach of contract action," a claim for breach of contract in Count 1 of the proposed Second Amended Complaint—like Count One of the Amended Complaint, Filing 12 at 12—is only the first of several causes of action Abira seeks leave to assert. Filing 50-1 at 10. Count 2 of the proposed Second Amended Complaint alleges breach of implied covenant of good faith and fair dealing. Filing 50-1 at 11; *see also* Filing 12 at 14 (Count Two of the Amended Complaint). Count 3 of the proposed Second Amended Complaint alleges four claims: fraudulent misrepresentation, negligent misrepresentation, equitable estoppel, and promissory estoppel. Filing 50-1 at 13; *see also* Filing 12 at 14–18 (alleging these claims in separate Counts Three through Six of the Amended Complaint). Finally, Count 4 of the proposed Second Amended Complaint alleges a claim identified as "quantum meruit/unjust enrichment." Filing 50-1 at 15; *see also* Filing 12 at 19

6

(Count Seven of the Amended Complaint). The proposed Second Amended Complaint omits Count Eight of the Amended Complaint, which alleged violation of the Families First Coronavirus Response Act (FFRCA) and the Coronavirus Aid, Relief, and Economic Security Act (CARES Act). Filing 12 at 21.

The proposed Second Amended Complaint prays for the following relief:

(a)    compensatory, direct, or actual damages in the amount of not less than $108,500;

(b)    all legal, equitable, consequential, and/or incidental damages as determined by the trier of fact;

(c)    punitive and/or exemplary damages as determined by the trier of fact;

(d)    attorney's fees, costs of court, and out-of-pocket expenses;

(e)    pre-and post-judgment interest at the highest rate(s) allowed by law; and

(f)    all such other and further relief, either at law or in equity, as may be deemed appropriate by the Court.

Filing 50-1 at 16–17. In contrast, the Amended Complaint sought relief pursuant to 29 U.S.C. § 1132, a provision of the Employee Retirement Income Security Act of 1974 (ERISA). Filing 12 at 22–23.[2]

---

[2] Specifically, the Amended Complaint sought the following relief:

i.    Benefits due to the insureds/claimants, cumulatively in the amount of $117,429.20, pursuant to 29 U.S.C. § 1132(a)(1)(B),

OR

Equitable relief due to the insureds/claimants, cumulatively in the amount of $117,429.20, pursuant to 29 U.S.C. § 1132(a)(3);

ii.    Attorney fees and costs of suit in connection with this action, pursuant to 29 U.S.C. § 1132(g)(1);

iii.    All such other and further relief, as the Court deems appropriate, pursuant to 29 U.S.C. § 1132(g)(2)(E).

Filing 12 at 22–23.

At the same time Abira filed its Cross-Motion to Amend, Abira also filed two identical Briefs in Opposition to Defendant's Motion to Dismiss or Strike and In Support of Plaintiff's Cross-Motion for Leave to Amend the Complaint. Filing 51; Filing 52. In a Text Order, the Court ordered that "[i]n the interest of judicial economy and economy to the parties," Mutual of Omaha would have to and including July 15, 2024, to file an opposition to Abira's Cross-Motion to Amend. Filing 54. The Court also ordered that further briefing on Defendant's Motion to Dismiss or Strike would be held in abeyance until the Court rules on Abira's Cross-Motion, and that, if necessary, the Court would set deadlines for further briefing by separate order. Filing 54. Abira filed no timely reply in support of its Cross-Motion to Amend.

## II.  LEGAL ANALYSIS

The Court will begin its legal analysis with some preliminary matters that clarify what is at stake on Abira's Cross-Motion to Amend. The Court will then turn to its analysis of the sufficiency of Abira's proposed Second Amended Complaint, starting with the standards applicable to a motion for leave to amend.

### A.  Preliminary Matters

In its identical Briefs in Opposition to Defendant's Motion to Dismiss or Strike and In Support of Plaintiff's Cross-Motion for Leave to Amend the Complaint, Abira asserts that it "has filed a cross-motion for leave to file a Second Amended Complaint to address the arguments contained in Defendant's motion to dismiss or strike or otherwise remedy deficiencies." Filing 51 at 5. Thus, Abira's Briefs address grounds to dismiss or strike and deficiencies in the Amended Complaint. Filing 12. Abira asserts that its proposed Second Amended Complaint is not "futile" because it states claims that could withstand a motion to dismiss under Federal Rule

of Civil Procedure 12(b)(6). Filing 51 at 10. Abira also "only address[es] those causes of action presented in the proposed Second Amended Complaint." Filing 51 at 12. Thus, Abira does not address any additional or differently formulated causes of action that were set out in the prior Amended Complaint.

As anticipated, Mutual of Omaha opposes leave to amend on the ground that the proposed Second Amended Complaint is "futile." Filing 55 at 3. Mutual of Omaha notes that the proposed Second Amended Complaint drops the claim for violation of the FFRCA and the CARES Act. Filing 55 at 2–3; *see also* Filing 12 at 21–22 (¶¶ 115–124) (Amended Complaint, Count Eight). Mutual of Omaha also notes that the proposed Second Amended Complaint withdraws any claim for relief under ERISA. Filing 55 at 2. Mutual of Omaha acknowledges that the proposed Second Amended Complaint adds a few allegations regarding the language of an assignment of benefits and adds a redacted list of the fifty-seven health care claims that Abira claims are at issue. Filing 55 at 3. Nevertheless, Mutual of Omaha argues that the proposed Second Amended Complaint should not be allowed because it reasserts claims that are legally deficient for the same reasons that Mutual of Omaha asserted in its Motion to Dismiss the Amended Complaint. Filing 55 at 3.

Consequences flow from these arguments. First, Abira's decision to defend against dismissal only as to claims in the proposed Second Amended Complaint and only as they are reformulated in the proposed Second Amended Complaint means that Abira has made no attempt to defend the legal viability or factual plausibility of the FFRCA and CARES Act claim set out in Count Eight of the Amended Complaint but not repeated in the proposed Second Amended Complaint. That claim is now waived. *United States v. Cooper*, 990 F.3d 576, 583 (8th Cir.

9

2021) ("Ordinarily, a party's failure to make an argument in its opening brief results in waiver of that argument."); *Montin v. Moore*, 846 F.3d 289, 295 (8th Cir. 2017) ("Because [c]laims not raised in an opening brief are deemed waived, and [appellant] failed to address the . . . claim in his opening brief, [appellant] waived this issue." (cleaned up)). Second, not only does Abira make no attempt in its Briefs to defend the relief sought in the Amended Complaint pursuant to ERISA, but Abira states that it "cannot allege based on the evidence in its possession whether the claims are indeed non-ERISA claims." Filing 51 at 10. Still more specifically, the proposed Second Amended Complaint alleges, "Upon information to date and belief, the claims are non-Employee Retirement Income Security Act of 1974 ('ERISA') claims." Filing 50-1 at 11 (¶ 19). Thus, Abira has also waived any claim for relief under ERISA. *Cooper*, 990 F.3d at 583; *Montin*, 846 F.3d at 295.

Finally, Abira has had a full and fair opportunity to defend the sufficiency of the claims in its Amended Complaint in its Briefs in Opposition to Defendant's Motion to Dismiss or Strike and In Support of Plaintiff's Cross-Motion for Leave to Amend the Complaint. Only Mutual of Omaha's reply would be required to complete briefing on Mutual of Omaha's Motion to Dismiss. *See* NECivR 7.1(c)(3) ("No party may file further briefs [beyond the opening brief, opposition brief, and reply brief] or evidence without the court's leave. If the moving party does not file an initial brief, it may not file a reply brief without the court's leave."). Where Abira has made no attempt to defend the legal viability or the factual plausibility of its claims in its Amended Complaint and has instead defended only the claims in its proposed Second Amended Complaint, Abira has waived and abandoned all claims in its prior Amended Complaint. *Id.*; *Montin*, 846 F.3d at 295. In other words, if the Court denies Abira's Cross-Motion to Amend on

10

the ground that the proposed amendment is futile, Abira cannot attempt to revive any part of its Amended Complaint. In that situation, dismissal of this action will be appropriate without the need to entertain further briefing on Mutual of Omaha's Motion to Dismiss. *See Kezhaya v. City of Belle Plaine, Minnesota*, 78 F.4th 1045, 1051 (8th Cir. 2023) ("A court's determination that a proposed amendment to a complaint would be futile operates as a ruling on the merits of the proposed claim."). Moreover, where Abira has waived or abandoned all claims in its Amended Complaint, if the Court finds that Abira's proposed Second Amended Complaint is futile, there will be no reason to permit further amendment to attempt to state claims upon which relief can be granted. *See Midwest Med. Sols., LLC v. Exactech U.S., Inc.*, 95 F.4th 604, 606 (8th Cir. 2024) (explaining that leave to amend can be denied *inter alia* for "repeated failure to cure deficiencies by amendments previously allowed"), *reh'g denied*, No. 22-2250, 2024 WL 1561617 (8th Cir. Apr. 11, 2024).

Thus, the stakes for Abira's Cross-Motion to Amend are particularly high, as disposition of that Cross-Motion will determine whether this action proceeds at all.

### B. Standards for Leave to Amend

Disposition of Abira's Cross-Motion to Amend involves standards for leave to amend. As explained below, in this case those standards incorporate standards for statement of a claim. The Court therefore turns to a summary of the applicable standards.

"[G]enerally, 'a party must submit the proposed amendment [to its complaint] along with its motion.'" *SBFO Operator No. 3, LLC v. Onex Corp.*, 101 F.4th 551, 562 (8th Cir. 2024) (quoting *Clayton v. White Hall Sch. Dist.*, 778 F.2d 457, 460 (8th Cir. 1985)). Indeed, the local rule concerning the form and content of motions to amend pleadings states in part,

A party who moves for leave to amend a pleading (including a request to add parties) must file as an attachment to the motion an unsigned copy of the proposed amended pleading that clearly identifies the proposed amendments. Except as stated in these rules or court order, the proposed amended pleading must be a complete pleading that, if allowed to be filed, supersedes the original pleading in all respects; no part of the prior pleading may be incorporated into the proposed amended pleading by reference.

NECivR 15.1(a). Abira has complied with this requirement by submitting the proposed Second Amended Complaint as an attachment to its Cross-Motion to Amend. Filing 50-1 at 4–19.

Leave to amend involves more substantive requirements as well. Abira asserts that its Cross-Motion to Amend is subject to Federal Rule of Civil Procedure 15(a)(2). Filing 51 at 8. That rule provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The rule also provides that "[t]he court should freely give leave when justice so requires." *Id.* As the Eighth Circuit Court of Appeals has explained,

"We review the denial of a motion for leave to amend for an abuse of discretion." *In re Target Corp. Secs. Litig.*, 955 F.3d 738, 744 (8th Cir. 2020) (citation omitted). "A court abuses its discretion when it denies a motion to amend [the pleadings] unless there exists undue delay, bad faith, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Id.* at 744–45 (quoting *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008)).

Generally, "[l]eave to amend [the pleadings] should be freely given to promote justice." *GWG DLP Funding V, LLC v. PHL Variable Ins. Co.*, 54 F.4th 1029, 1036 (8th Cir. 2022) (citing Fed. R. Civ. R. 15(a)).

*Midwest Med. Sols., LLC*, 95 F.4th at 606–07;[3] *see also Clobes v. 3M Co.*, No. 23-2266, 2024 WL 3309267, at *4 (8th Cir. July 5, 2024) ("Ordinarily, the decision of whether to allow a

---

[3] As the Eighth Circuit also explained in *Midwest Medical Solutions*,

When a party seeks to amend after court-imposed deadlines for doing so, however, the stricter standards of Federal Rule of Civil Procedure 16 apply. *Sherman v. Winco Fireworks, Inc.*, 532 F.3d

plaintiff leave to amend a complaint is within the district court's discretion, however, when the court denies leave on the basis of futility, . . . appellate review of this legal conclusion is . . . de novo." (quoting *Cornelia I. Crowell GST Tr. v. Possis Med., Inc*., 519 F.3d 778, 781-82 (8th Cir. 2008)).

The ground that Mutual of Omaha asserts for denial of Abira's Cross-Motion to Amend is "futility" of the proposed Second Amended Complaint. Filing 55 at 3; *see also Midwest Med. Sols.*, 95 F.4th at 606–07 (identifying "futility" as a ground to deny leave to amend). As the Eighth Circuit has explained, "An amendment is futile if the amended claim could not withstand a motion to dismiss under Rule 12(b)(6)." *See Mt. Hawley Ins. Co. v. City of Richmond Heights, Missouri*, 92 F.4th 763, 769 (8th Cir. 2024) (quoting *Hillesheim v. Myron's Cards & Gifts, Inc*., 897 F.3d 953, 955 (8th Cir. 2018)). The "now-familiar standard" to state a claim that could withstand dismissal under Rule 12(b)(6) "require[es] a complaint to 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *DeCastro v. Hot Springs Neurology Clinic, P.A*., No. 23-1040, 2024 WL 3352968, at *2 (8th Cir. July 10, 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "'[F]actual' matter does not include 'labels . . . or a formulaic recitation of the elements of a cause of action,' 'naked assertion[s] of claims,' or legal conclusions 'couched as' facts." *Id.* (again quoting *Iqbal*, 556 U.S. at 678). "A court's determination that a proposed amendment to a complaint would be futile operates as a ruling on the merits of the proposed claim." *Kezhaya v. City of Belle Plaine, Minnesota*, 78 F.4th

---

709, 716 (8th Cir. 2008); *see also Williams v. TESCO Servs., Inc*., 719 F.3d 968, 977 (8th Cir. 2013) ("[A] motion for leave to amend filed outside the district court's Rule 16(b) scheduling order requires a showing of good cause[.]" (citations omitted)).

*Midwest Med. Sols.*, 95 F.4th at 607. There is as yet no court-imposed deadline for amendments in this case, so Rule 16 does not apply.

1045, 1051 (8th Cir. 2023) (citing *SFM Holdings, Ltd. v. Banc of Am. Secs., LLC*, 764 F.3d 1327, 1344 (11th Cir. 2014), *A.H. v. St. Louis County*, 891 F.3d 721, 730 (8th Cir. 2018), and *Knapp v. Hanson*, 183 F.3d 786, 790 (8th Cir. 1999)).

With these standards in mind, the Court will consider whether the proposed Second Amended Complaint should be allowed or if it is instead futile.

### C.  The Proposed Second Amended Complaint Is Futile

The Court concludes that for various reasons all the claims asserted in the proposed Second Amended Complaint are futile because they cannot withstand a Rule 12(b)(6) motion to dismiss. *See Mt. Hawley Ins. Co.*, 92 F.4th at 769. The Court will explore those reasons for each claim below.

*1. The Breach-of-Contract Claim in Count 1*

a.  The Allegations

In addition to the factual allegations set out in the factual background in § I.B., Count 1 of the proposed Second Amended Complaint includes the following allegations concerning Abira's breach-of-contract claim. First, the proposed Second Amended Complaint alleges that the assignments from insureds to Abira created valid and binding contracts between Abira and Mutual of Omaha. Filing 50-1 at 10 (¶ 17). It alleges further that Abira performed its obligations under the contracts by providing Laboratory Testing Services and properly submitting claims for payment to Mutual of Omaha. Filing 50-1 at 10 (¶ 18). The proposed Second Amended Complaint alleges, "Pursuant to the Contract[s], Plaintiff was, among other things, entitled to have its claims for services rendered to Defendant's subscribers/member/insureds listed in Exhibit 1 processed and paid promptly by Defendant." Filing 50-1 at 10–11 (¶ 19). Next, it alleges,

20.     Instead, Defendant repeatedly breached the Contract[s] by either failing to respond at all to properly submitted claims or, for those claims in which Defendant did choose to respond, regularly refusing to pay and/or underpaying claims submitted by Plaintiff for reasons that were (and remain) entirely groundless.

Filing 50-1 at 11 (¶ 20). The proposed Second Amended Complaint then alleges, "Because of Defendant's multiple breaches of the Contract[s], Plaintiff has been deprived of thousands of dollars to which it is contractually (and otherwise) entitled," totaling "approximately $108,500." Filing 50-1 at 11 (¶ 21); Filing 50-1 at 11 (¶ 22) ("Defendant's failure to pay Plaintiff as required under the Contract(s) (and applicable law) has proximately caused damages to Plaintiff in an amount not less than $108,500.").

b. The Parties' Arguments

Abira argues that it has properly alleged that it was assigned the "benefit of payment right" under the insureds' policies with Mutual of Omaha, so Abira now stands in the shoes of the insureds. Filing 51 at 14. Consequently, Abira argues that it has standing to bring a claim to collect from Mutual of Omaha the payment or reimbursement due to the insureds under their respective insurance contracts. Filing 51 at 14–15. Abira asserts that despite this right to payment Mutual of Omaha has failed to pay for the services rendered. Filing 51 at 15. Abira contends that it has pleaded facts from which the existence of a contract can be inferred, specifically, "(a) Plaintiff performed a myriad of services for Defendant's members; and (b) Defendant did reimburse Plaintiff on a certain occasion, in an insufficient amount (thereby confirming the

15

existence of an agreement between the parties via its course of conduct)." Filing 51 at 15. Thus, Abira asserts that it has sufficiently pleaded its breach-of-contract claim. Filing 51 at 15.[4]

Mutual of Omaha argues that "the mere existence of an assignment does not create a contractual obligation for Mutual of Omaha to pay a particular claim if the underlying contractual rights that were assigned do not require Mutual of Omaha to pay." Filing 55 at 4. Mutual of Omaha acknowledges that the proposed Second Amended Complaint adds facts about Abira's standing to sue based on assignments. Filing 55 at 4. Nevertheless, Mutual of Omaha argues that Abira must allege facts establishing that the assigned claims were covered by Mutual of Omaha's policies, but Abira has not done so. Filing 55 at 4. Indeed, Mutual of Omaha points out that the proposed Second Amended Complaint does not allege any facts regarding the underlying contract terms between Mutual of Omaha and its policyholders that obligate Mutual of Omaha to pay the claims now specifically identified in Exhibit 1. Filing 55 at 4.[5]

---

[4] Abira also argues that "contrary to the arguments of the Defendant, Abira has sufficiently pleaded a claim as third-party beneficiary status, which requires a showing that the contracting parties intended that a third party receive a benefit from the contract that may be enforced in court." Filing 51 at 15. The basis for such a "third-party beneficiary" status is alleged to be the assignments from the insureds. Filing 51 at 15–16. This argument is irrelevant, because Mutual of Omaha nowhere argued in its Motion to Dismiss, Filing 46, or its supporting brief, Filing 47, that third-party beneficiary status was even at issue.

[5] Mutual of Omaha also points out that it exited the group health insurance business approximately fifteen years ago, so now it generally offers only Medicare Supplement policies. Filing 55 at 4. Mutual of Omaha argues that this fact is important because the proposed Second Amended Complaint does not allege that any of the claims in Exhibit 1 were submitted to Medicare, which would generally be a condition precedent to payment under Mutual of Omaha's policies. Filing 55 at 4. This argument is of no importance here because it is based on information that is found nowhere in the Amended Complaint or proposed Second Amended Complaint.

c.  The Proposed Second Amended Complaint Does Not Plead Facts
Sufficient to State a Breach-of-Contract Claim

The parties agree—at least for purposes of the Cross-Motion to Amend—that New Jersey

law applies to Abira's claims in the proposed Second Amended Complaint. Filing 51 at 12;

Filing 55 at 4–8. The New Jersey Supreme Court has explained,

> To prevail on a claim of breach of contract,
>
> [o]ur law imposes on a plaintiff the burden to prove four elements: first,
> that "the parties entered into a contract containing certain terms"; second,
> that "plaintiffs did what the contract required them to do"; third, that
> "defendants did not do what the contract required them to do," defined as
> a "breach of the contract"; and fourth, that "defendants' breach, or failure
> to do what the contract required, caused a loss to the plaintiffs."
>
> [*Globe Motor Co. v. Igdalev*, 225 N.J. 469, 482, 139 A.3d 57 (2016) (alterations
> omitted) (quoting Model Jury Charges (Civil), 4.10A "The Contract Claim --
> Generally" (approved May 1998)).]

*Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021); *Woytas v. Greenwood Tree Experts, Inc.*,

206 A.3d 386, 392 (N.J. 2019) (quoting these same elements from *Globe Motor Co.*, 139 A.3d at

57).  Abira's proposed Second Amended Complaint fails to allege sufficiently the first and third

elements.

As to the first element of its breach-of-contract claim, Mutual of Omaha appears to

concede—and the Court concludes—that Abira has plausibly alleged the existence and terms of

the assignments. Specifically, the proposed Second Amended Complaint alleges that requisitions

for Laboratory Testing Services submitted on behalf of Mutual of Omaha's insureds contained

the assignment of the insureds' right to payment for those services from Mutual of Omaha to

Abira. Filing 50-1 at 7–8 (¶ 10) (alleging that each insured agreed to "assign all rights and

benefits under my health plan and direct payments be made to [Abira] for laboratory services

furnished to me by [Abira]."). Such an assignment extinguishes the right in the assignor insureds

17

to payment from Mutual of Omaha and recreates the same right in the assignee Abira. *Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med. & Physical Therapy*, 5 A.3d 166, 170 (N.J. Super. App. Div. 2010)*, aff'd*, 46 A.3d 1272 (N.J. 2012). Nothing in the proposed Second Amended Complaint suggests that the assignment is other than a straightforward transfer of the right to receive payment. *Id.* at 171.

However, it appears that Abira asserts that allegations of the existence and terms of contracts between it and the insureds—the assignments—are sufficient to allege the existence and terms of a contract between it and Mutual of Omaha. The rub is that such an assignment did not make Abira a party to the insurance contract between the insureds and Mutual of Omaha. *Id.* At most, the insureds agreed that whatever monies they were entitled to receive from their health insurance plan with Mutual of Omaha on account of the care the insureds had been given by Abira is payable to Abira. *See id.* at 172 (quoting *Shaw v. State Farm Fire & Casualty Co.*, 37 So.3d 329, 332 (Fla. Dist. Ct. App. 2010)). That agreement means that "[i]f no monies are due and owing" to the insureds for the services Abira provided—for whatever reason—then Abira has no claim against Mutual of Omaha "precisely because [Abira] is subject to [Mutual of Omaha's] defenses against the insured[s]." *Id.* (quoting *Shaw*, 37 So.3d at 333). Thus, to show that the insureds were entitled to any payment from Mutual of Omaha, Abira must allege that the insureds' insurance policies from Mutual of Omaha required Mutual of Omaha to pay for the services that Abira provided. To put it another way, as a matter of law, the assignments did not create contractual obligations on the part of Mutual of Omaha to pay for the Laboratory Testing Services that were provided by Abira to Mutual of Omaha's insureds, members, or subscribers as

the proposed Second Amended Complaint alleges, Filing 50-1 at 7 (¶ 9)), unless the insurance

policies required Mutual of Omaha to pay for such services.

There are no allegations at all in the proposed Second Amended Complaint that the

underlying insurance policies included "certain terms" requiring Mutual of Omaha to pay for the

services provided by Abira. *Goldfarb*, 245 A.3d at 577. No copies of the insurance policies are

attached to the proposed Second Amended Complaint and no language from any insurance

policy is alleged in the proposed Second Amended Complaint. *See generally*, Filing 50-1 at 4–

19. Without an allegation of the terms of the insurance policies, the Court cannot plausibly infer

that Mutual of Omaha had any obligation to pay for the laboratory testing services provided by

Abira. *DeCastro*, 2024 WL 3352968, at *2 (explaining that to withstand dismissal under Rule

12(b)(6) a complaint must "contain sufficient factual matter, accepted as true, to state a claim to

relief that is plausible on its face." (quoting *Ashcroft*, 556 U.S. at 678)).

The allegations actually made in the proposed Second Amended Complaint also are not

sufficient to establish or allow the Court plausibly to infer that terms of the insurance policies

required Mutual of Omaha to pay for the testing services at issue. *Id.* The proposed Second

Amended Complaint alleges, "As Plaintiff has come to learn, the Defendant—over an extended

period of time—blatantly disregarded, among other of its duties, express obligations to pay

Plaintiff for services rendered." Filing 50-1 at 9 (¶ 12). However, that allegation is wholly

conclusory and must be disregarded. *See DeCastro*, 2024 WL 3352968, at *2 ("'[F]actual'

matter [accepted as true to determine whether a proposed amendment can withstand a Rule

12(b)(6) motion] does not include 'labels . . . or a formulaic recitation of the elements of a cause

of action,' 'naked assertion[s] of claims,' or legal conclusions 'couched as' facts." (quoting

*Iqbal*, 556 U.S. at 678)). Where and how these "express obligations" are "expressed" is left entirely to the imagination.

Similarly, while the proposed Second Amended Complaint alleges that Mutual of Omaha "followed contrived and meritless reasons for refusing and neglecting to properly process a myriad of [Abira's] claims for payment," Filing 50-1 at 9 (¶ 14), that allegation is again wholly conclusory and of no moment. *See DeCastro*, 2024 WL 3352968, at *2. There are no plausible factual allegations of any term of the Mutual of Omaha insurance policies that demonstrate or even reasonably suggest that the excuses for non-payment were "contrived" or "meritless." *See generally* Filing 50-1 at 4–19. More specifically, there are no plausible factual allegations of any term of the Mutual of Omaha insurance policies from which the Court could infer that Abira provided adequate claim information, timely filed the claims, or that the insureds were covered for the services Abira provided. *See* Filing 50-1 at 9 (¶ 14) (listing these as examples of the "contrived and meritless reasons" for non-payment). Further allegations that Mutual of Omaha refused to properly process and pay Abira for services rendered to insureds, Filing 50-1 at 9 (¶ 15), are likewise wholly conclusory and presuppose without any plausible factual basis that there was a duty to process and pay for the services. *See DeCastro*, 2024 WL 3352968, at *2.

Abira argues that the existence of a contract can be inferred from conduct based on allegations that Mutual of Omaha did reimburse Abira on a certain occasion although only in an insufficient amount. Filing 51 at 15. There are a few allegations in the proposed Second Amended Complaint of "underpaying claims" in relation to the breach-of-contract claim. *See* Filing 50-1 at 5 (¶¶ 2, 4); Filing 50-1 at 11 (¶¶ 20–21). However, such allegations are wholly conclusory as well as inadequate because there are no factual allegations of terms of the

underlying insurance contracts that required payment in any amount. *See DeCastro*, 2024 WL 3352968, at *2.

Relatedly, as to the "breach" element, "[a] party violates the terms of a contract by failing to fulfill a requirement enumerated in the agreement." *Woytas*, 206 A.3d at 392. Thus, where there are no adequate allegations of the terms of the contract—*i.e.*, the requirements enumerated in the agreement—there can be no adequate allegations of breach of the contract.

Where plausible allegations to support two of the elements of a breach-of-contract claim are lacking, the breach-of-contract claim cannot withstand a Rule 12(b)(6) motion. Consequently, Count 1 of the proposed Second Amended Complaint is futile, and leave to amend to assert that claim is denied. *See Midwest Med. Sols.*, 95 F.4th at 606–07 (identifying "futility" as a ground to deny leave to amend); *Mt. Hawley Ins. Co.*, 92 F.4th at 769 ("An amendment is futile if the amended claim could not withstand a motion to dismiss under Rule 12(b)(6)." (quoting *Hillesheim*, 897 F.3d at 955)). This determination "operates as a ruling on the merits of the proposed [breach-of-contract] claim." *Kezhaya*, 78 F.4th at 1051.

### 2. The Breach-of-Covenant Claim in Count 2

#### a. The Allegations

In addition to the factual allegations set out in the factual background in § I.B., Count 2 of the proposed Second Amended Complaint includes the following allegations concerning Abira's claim of breach of the implied covenant of good faith and fair dealing. The proposed Second Amended Complaint alleges that "[T]he Contract" is valid and binding between Abira and Mutual of Omaha with respect to the insureds listed in Exhibit 1. Filing 50-1 at 12 (¶ 24). However, it also alleges, "Regardless every contract imposes upon each party a duty of good

faith and fair dealing in its performance and enforcement"—in other words, implied in all contracts is a covenant of good faith and fair dealing. Filing 50-1 at 12 (¶ 25). The proposed Second Amended Complaint then alleges,

> 26.    Defendant's actions here, including but not limited to, its failure and/or refusal to respond to properly submitted claims or, for those claims in which Defendant did choose to respond, regularly refusing to pay and/or underpaying claims submitted by Plaintiff for reasons that were (and remain) entirely groundless, breached this implied covenant of good faith and fair dealing with respect to the contractual obligations that arose regarding the patients listed in the attached Exhibit 1.

Filing 50-1 at 12 (¶ 26). The proposed Second Amended Complaint alleges that Mutual of Omaha's breach of the covenant proximately caused Abira damages in the amount of "not less than $108,500." Filing 50-1 at 12–13 (¶ 27).

>    b.   The Parties' Arguments

Abira argues that it has "properly" stated a claim for breach of the implied covenant of good faith in the proposed Second Amended Complaint. Filing 51 at 16. The entirety of its argument on this claim after stating the requirements for such a claim is the following:

> Here, the failure of Defendant to pay for services rendered, interposing additional documentary requirements, which documentary requirements which, when provided, were ignored, disregarded and did not result in payment for services, depriving its insureds/members, who assigned rights to Abira, of its justifiable expectations, reflects a breach of the implied covenant of good faith and fair dealing.

Filing 51 at 16–17.

Mutual of Omaha's argument is equally terse:

> In the Proposed Second Amended Complaint, Abira again alleges a separate claim for breach of the implied covenant of good faith and fair dealing (Count 2), even though that claim is duplicative and redundant of its breach of contract claim (Count 1). Asserting redundant claims is not allowed, making the amendment futile.

Filing 55 at 5 (supporting caselaw citation omitted).

      c.   The Breach-of-Covenant Claim Impermissibly Duplicates the Breach-of-Contract Claim

The New Jersey Supreme Court has held that a cause of action for breach of the implied covenant of good faith and fair dealing does not provide a plaintiff with additional damages for the breach of an express term of a contract. *Wade v. Kessler Inst*., 798 A.2d 1251, 1262 (N.J. 2002). Specifically, the New Jersey Supreme Court explained that where the "two asserted breaches basically rest on the same conduct," there "can be no separate breach of an implied covenant of good faith and fair dealing." *Id.*; *see also Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc*., 449 F. Supp. 3d 449, 463 (D.N.J. 2020) ("The plaintiff cannot maintain a breach of the implied covenant of good faith and fair dealing claim that is duplicative of its breach of contract claim." (citing *Adler Eng'rs, Inc. v. Dranoff Props*., No. 14-921, 2014 WL 5475189, at *11 (D.N.J. Oct. 29, 2014))); *Adler Eng'rs, Inc.*, 2014 WL5475189, at *11 ("[A] '[p]laintiff may not maintain a separate action for breach of the implied covenant of good faith and fair dealing [where] it would be duplicative of [its] breach of contract claim.'" (quoting *Hahn v. OnBoard LLC*, No. 09–3639, 2009 WL 4508580, at *6 (D.N.J. Nov. 16, 2009))); *Hahn*, 2009 WL 4508580, at *6 ("In both New York and New Jersey, a plaintiff cannot maintain a claim for breach of the implied covenant of good faith and fair dealing when the conduct at issue is governed by the terms of an express contract or the cause of action arises out of the same conduct underlying the alleged breach of contract." (citing *inter alia Wade*, 798 A.2d at 1259–60)). In *Red Hawk Fire & Security, LLC*, the United States District Court for the District of New Jersey explained that, even if the breach-of-contract claim and the breach-of-implied-covenant

23

claim are duplicative in part, the latter claim may proceed where it also relies on additional conduct making it "differentiable to the breach of contract claim." 449 F. Supp. 3d at 463.

Here, the conduct on which the breach-of-contract claim in the proposed Second Amended Complaint is based is the following:

> 20.     Instead, Defendant repeatedly breached the Contract by either failing to respond at all to properly submitted claims or, for those claims in which Defendant did choose to respond, regularly refusing to pay and/or underpaying claims submitted by Plaintiff for reasons that were (and remain) entirely groundless.

Filing 50-1 at 11 (¶ 20). The conduct on which the breach-of-implied-covenant claim in the proposed Second Amended Complaint is based is the following:

> 26.     Defendant's actions here, including but not limited to, its failure and/or refusal to respond to properly submitted claims or, for those claims in which Defendant did choose to respond, regularly refusing to pay and/or underpaying claims submitted by Plaintiff for reasons that were (and remain) entirely groundless, breached this implied covenant of good faith and fair dealing with respect to the contractual obligations that arose regarding the patients listed in the attached Exhibit 1.

Filing 50-1 at 12 (¶ 26). It is readily apparent that these two claims are based on the very same conduct. No additional or different conduct is at issue in the breach-of-implied-covenant claim from the conduct at issue in the deficient breach-of-contract claim that might allow the breach-of-implied-covenant claim to withstand a Rule 12(b)(6) claim. *Cf. Red Hawk Fire & Sec., LLC,* 449 F. Supp. 3d at 463. Thus, this is a case in which there "can be no separate breach of an implied covenant of good faith and fair dealing." *Wade,* 798 A.2d at 1262.

Consequently, Count 2 of the proposed Second Amended Complaint is futile, and leave to amend to assert that claim is denied. *See Midwest Med. Sols.,* 95 F.4th at 606–07 (identifying "futility" as a ground to deny leave to amend); *Mt. Hawley Ins. Co.,* 92 F.4th at 769 ("An

amendment is futile if the amended claim could not withstand a motion to dismiss under Rule 12(b)(6)." (quoting *Hillesheim*, 897 F.3d at 955)). This determination "operates as a ruling on the merits of the proposed [breach-of-implied-covenant] claim." *Kezhaya*, 78 F.4th at 1051.

### 3. The Claims in Count 3

Count 3 of the proposed Second Amended Complaint purports to state four separate claims: fraudulent misrepresentation, negligent misrepresentation, equitable estoppel, and promissory estoppel. *See* Filing 50-1 at 13. As a conglomerate pleading of four claims, it is no model of clarity. The Court finds it helpful to the Court's attempt to untangle the muddle to set out the elements of each claim. The Court may then be better able to determine where the claims overlap and where they differ and hence what allegations in Count 3 relate to each claim.

### a. Elements of the Claims

Under New Jersey law, "[n]egligent misrepresentation is . . . [1] [a]n incorrect statement, negligently made and [2] justifiably relied on, [and] [3] may be the basis for recovery of damages for economic loss . . . sustained as a consequence of that reliance." *H. Rosenblum, Inc. v. Adler*, 461 A.2d 138, 142–43 (N.J. 1983) (bracketed numbers added); *see also Kaufman v. i-Stat Corp.*, 754 A.2d 1188, 1195 (N.J. 2000) (citing *H. Rosenblum* for the elements of negligent misrepresentation). Under New Jersey law, "[t]he five elements of common-law fraud are: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997); *see also Kaufman*, 754 A.2d at 1195 (citing *Gennari* for the elements of fraudulent misrepresentation). As the New Jersey Supreme Court has explained, "The element

of reliance is the same for fraud and negligent misrepresentation." *Kaufman*, 754 A.2d at 1195.

Thus, in both fraudulent and negligent misrepresentation cases, the required reliance may be

"indirect," that is, the defendant does not have to make the statement directly to the person who

relied upon it, but the plaintiff "would have to establish that they . . . received . . . the

statements . . . that they relied on the statements and that the misstatements therein . . . were a

proximate cause of the . . . damage." *Id.* (ellipses in the original) (quoting *H. Rosenblum*, 461

A.2d 138, and adding, "[O]ur law of indirect reliance, even though most recently clarified in

negligent-misrepresentation cases, is the same in fraud cases, the element of reliance being the

same in both"). A difference between the claims is that "negligent misrepresentation does not

require scienter as an element," so "it is easier to prove than fraud." *Id.* at 1196. In the case of

fraudulent misrepresentation, the "intent" element, "consisting of the intent to induce reliance,

constitutes a subjective intent to injure." *Morton Int'l, Inc. v. Gen. Acc. Ins. Co. of Am.*, 629 A.2d

831, 879 (N.J. 1993).

The New Jersey Supreme Court has also explained the elements of promissory estoppel

and equitable estoppel:

> There are four elements to a claim under the doctrine [of promissory estoppel]:
> "(1) a clear and definite promise; (2) made with the expectation that the promisee
> will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment."
> *Goldfarb v. Solimine*, 245 N.J. 326, 339-40, 245 A.3d 570 (2021) (quoting *Toll
> Bros., Inc. v. Bd. of Chosen Freeholders of Burlington*, 194 N.J. 223, 253, 944
> A.2d 1 (2008)).
>
> Promissory estoppel is an equitable doctrine that has its roots in contract
> law but is distinct from a typical claim to enforce a contract. *Goldfarb*, 245 N.J. at
> 340-41, 341 n.6, 245 A.3d 570. . . .
>
> Appellants also rely on the related theory of equitable estoppel, which
> requires a showing of [1] "a knowing and intentional misrepresentation by the
> party sought to be estopped [2] under circumstances in which the

misrepresentation would probably induce reliance, and [3] reliance by the party seeking estoppel to his or her detriment." *In re Johnson*, 215 N.J. 366, 379, 73 A.3d 440 (2013) (quoting *O'Malley v. Dep't of Energy,* 109 N.J. 309, 317, 537 A.2d 647 (1987)); *see also Williston on Contracts* § 8:3 (Lord ed. 2008).

*In re Att'y Gen. L. Enf't Directive Nos. 2020-5 & 2020-6*, 252 A.3d 135, 155–56 (N.J. 2021) (bracketed numbers for the elements of equitable estoppel added). "Following the Restatement (Second) of Contracts, courts, including those in [New Jersey], allow reliance damages to parties who prevail on claims of promissory estoppel." *Goldfarb*, 245 A.3d at 578 (citing *Restatement (Second) of Contracts* § 90 cmt. d (Am. Law Inst. 1981)). On the other hand, equitable estoppel is ordinarily raised as a defense to claims of another, or to prevent a person from raising a certain argument, not as an affirmative claim for relief. *D'Agostino v. Maldonado*, 78 A.3d 527, 546–47 (N.J. 2013) (discussing equitable estoppel as a defense).

Thus, it is clear that these four claims have at least three elements in common: (1) a representation or promise; (2) reliance on that representation or promise by the claimant; and (3) resulting damages or detriment to the claimant.

b.   The Allegations

The first allegation of a representation or promise in support of these claims in Count 3 of the proposed Second Amended Complaint is the following:

29.    Over the course of several years, Plaintiff submitted approximately fifty-seven claims to Defendant regarding Laboratory Testing Services rendered to the patients listed in Exhibit 1. Defendant's representatives not only requested those services on behalf of Defendant's insureds/members/subscribers, but represented to Plaintiff that the patients/insureds were all covered by policies of insurance issued by Defendant and that Defendant would pay for the services to be rendered by the Plaintiff to Defendant's insureds.

27

Filing 50-1 at 13 (¶ 29).[6] A second allegation of a representation or promise in Count 3 is the following:

> 30.    The Defendant, by virtue of its course of conduct, did pay on the number of claims, approximately fifty-seven claims, submitted by the Plaintiff. However, it did not pay and/or underpaid approximately fifty-seven of the claims submitted by Plaintiff over the course of several years. Defendant's course of conduct constituted a representation of Plaintiff that it would continue to pay for Laboratory Testing Services rendered by Plaintiff.

Filing 50-1 at 13–14 (¶ 30). This paragraph confusingly alleges both that 57 claims were paid and those or another 57 claims were not paid (or were underpaid). Nevertheless, this paragraph does attempt to allege a representation or promise from Mutual of Omaha's conduct.

It appears that Abira has attempted to allege the falsity of the representation or promise as follows:

> 33.    As a result of failing to pay on the approximately fifty-seven claims submitted, Defendant has demonstrated that it did not intend to reimburse Plaintiff for providing Laboratory Testing Services for Defendant's insureds, subscribers and/or members in accordance with Defendant's reimbursement standards and protocols.

Filing 50-1 at 14–15 (¶ 32). When compared with the allegations in paragraph 30 set out above, it appears that Abira has alleged that Mutual of Omaha's course of conduct—involving either paying some claims or not paying some claims—demonstrates both a representation that the claims would be paid and Mutual of Omaha's intent not to pay the claims.

---

[6] This paragraph of the proposed Second Amended Complaint continues:

> The Defendant's insureds were each a beneficiary of the services rendered by the Plaintiff over the course of several years, and because of the assignment(s) of benefits executed by those patients, contractual rights were assigned by Defendant's insureds in factor [sic] of the Plaintiff, which obligated the Defendant to pay for those Laboratory Testing Services.

Filing 50-1 at 13 (¶ 29). However, this part of the paragraph contains no allegation of a representation or promise; instead, it simply reiterates Abira's allegation of contractual rights against Mutual of Omaha.

Paragraph 30, quoted above, continues with an allegation of reliance: "The Plaintiff relied upon the representations and course of conduct between Defendant and Plaintiff. The plaintiff's reliance was reasonable and justified." Filing 50-1 at 14 (¶ 30). There are two other pertinent allegations of reliance. *See* Filing 50-1 at 14 (¶ 31) (alleging in part that "Plaintiff in good faith relied upon Defendant's representations and the parties' course of dealings" and that "Plaintiff was induced to adversely change its position because Plaintiff provided Laboratory Testing Services to Defendant's subscribers and/or members under the belief that it would be compensated by Defendant for those services."); Filing 50-1 at 14 (¶ 32) ("Plaintiff in good faith relied upon and expected Defendant to comply with its payment obligations.").

As to damages or detriment from the conduct alleged, the proposed Second Amended Complaint alleges the following:

> 35.    By failing to pay Plaintiff the usual, customary, and reasonable charges for its professional services, in accordance with Defendant's own reimbursement standards and protocols, Defendant breached its obligation to reimburse Plaintiff for providing testing services for Defendant's subscribers and/or members. Accordingly, Defendant has proximately caused damages to Plaintiff in an amount to be determined by the trier of fact at trial.

Filing 50-1 at 15 (¶ 35).

The remaining allegations in support of Count 3 of the proposed Second Amended Complaint all appear to be attempts to allege the equitable consequences of Mutual of Omaha's representations or promises on which Abira detrimentally relied. Those allegations are the following:

> 31.    As a result, Defendant is precluded, both at law and in equity, from asserting rights that might have existed against Plaintiff because Plaintiff in good faith relied upon Defendant's representations and the parties' course of dealings. Plaintiff was induced to adversely change its position because Plaintiff provided

29

Laboratory Testing Services to Defendant's subscribers and/or members under the belief that it would be compensated by Defendant for those services.

32.    Moreover, Defendant is precluded, both at law and in equity, from asserting rights that might have existed against Plaintiff because Plaintiff in good faith relied upon and expected Defendant to comply with its payment obligations.

* * *

34.    The Defendant is also precluded from repudiating its payment and other contractual and [sic], because to do so would be violative of the demands of justice and good conscience, whether such failure arose by silence or omission where one has a duty to speak or act.

Filing 50-1 at 14–15 (¶¶ 31–32, 34).

The Court turns next to the sufficiency of these allegations to state any of the claims alleged in Count 3.

### c.    The Misrepresentation Claims Do Not Plead Sufficient Facts to State Claims

Abira addresses together the sufficiency of the claims of fraudulent misrepresentation and negligent misrepresentation as does Mutual of Omaha. Filing 51 at 17–18; Filing 55 at 5. The Court will do the same, beginning with a summary of the parties' arguments.

Abira states that it has asserted these misrepresentation claims as "alternative causes of action for relief" in response to Mutual of Omaha's argument that there is no contract between the parties. Filing 51 at 18. Abira asserts, "Since Plaintiff has alleged the cause of actions [sic] under alternative theories of relief, it is premature to dismiss this cause of action [sic] under the economic loss doctrine." Filing 51 at 18. Abira cites no authority in support of this argument. The rest of Abira's argument on the sufficiency of these claims is the following:

Defendants ensured that insureds/claimants (and hence Abira who is assigned their rights) relied on its representations, be it through payment, representation to issue an explanation or by omission, and course of dealings in order to continue

30

with rendering testing services. Abira's reliance on the representation or course of conduct of the Defendant was reasonable. Abira has suffered damages.

Filing 51 at 18. Mutual of Omaha's argument that these claims are futile is again equally terse:

> In the Proposed Second Amended Complaint, Abira again asserts claims for Fraudulent and Negligent Misrepresentation even though Abira has not identified any statement made by Mutual of Omaha upon which Abira relied, let alone a false statement, and Abira has failed to allege fraud with particularity, i.e. the 'who, what, when, where and how surrounding the alleged fraud ... and what was obtained as a result'" as required by Rule 9(b). Accordingly, the proposed amendment is futile.

Filing 55 at 5 (internal citation omitted).

Mutual of Omaha is correct that the allegations of fraudulent misrepresentation fall well short of the requirement to plead fraud with particularity under Federal Rule of Civil Procedure 9(b). The Eighth Circuit Court of Appeals has repeatedly stated, "[A]llegations of fraud . . . [must] be pleaded with particularity. In other words, [Federal] Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story." *UMB Bank, N.A. v. Guerin*, 89 F.4th 1047, 1051 (8th Cir. 2024) (quoting *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011)). The allegation of "who" made the representations is only vaguely alleged as unidentified "representatives" of Mutual of Omaha and the allegation of "what" was represented is only slightly less vaguely alleged to be that Mutual of Omaha "would pay for the services to be rendered by [Abira] to [Mutual of Omaha's] insureds." Filing 50-1 at 13 (¶ 29). Similarly, an allegation of a representation that claims would be paid from partial payment of one or a few claims, Filing 50-1 at 13–14 (¶ 30), is far from pleading the "what" of any representation with the "particularity" required by Rule 9(b). There are also no allegations whatsoever of "when," "where," or "how" any representation by a "representative" was made to Abira. Thus, the pleading of the fraudulent misrepresentation claim in Count 3 of the proposed

31

Second Amended Complaint cannot withstand a motion to dismiss pursuant to Rule 12(b)(6) and is consequently futile. *See Midwest Med. Sols.*, 95 F.4th at 606–07 (identifying "futility" as a ground to deny leave to amend); *Mt. Hawley Ins. Co.*, 92 F.4th at 769 ("An amendment is futile if the amended claim could not withstand a motion to dismiss under Rule 12(b)(6)." (quoting *Hillesheim*, 897 F.3d at 955)).

Even though Abira's negligent misrepresentation claim is not subject to the "particularity" requirement of Rule 9(b), it is nevertheless entirely insufficient. Mutual of Omaha is correct that Abira has not identified any statement, representation, or promise made by Mutual of Omaha on which Aibra relied or that any such statement, representation, or promise was false. *See H. Rosenblum*, 461 A.2d at 142 (explaining that a negligent misrepresentation requires *inter alia* "[a]n incorrect statement, negligently made and justifiably relied on. . . ."); *Gennari*, 691 A.2d at 367 (explaining that fraudulent misrepresentation requires *inter alia* "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity. . . ."). Indeed, what is alleged in the proposed Second Amended Complaint as to these elements is no more than inadequate "'formulaic recitation of the elements of a cause of action,' 'naked assertion[s] of claims,' or legal conclusions 'couched as' facts." *DeCastro*, 2024 WL 3352968, at *2 (quoting *Iqbal*, 556 U.S. at 678).

Specifically, as to the "representation" element, the proposed Second Amended Complaint alleges only that unidentified "representatives" of Mutual of Omaha "represented to [Abira] that the patients/insureds were all covered by policies of insurance issued by [Mutual of Omaha] and that [Mutual of Omaha] would pay for the services to be rendered by [Abira] to [Mutual of Omaha's] insureds." Filing 50-1 at 13 (¶ 29). This allegation is too vague and

conclusory and so unsupported by any allegations of a plausible factual basis that it does not

state a claim. *See Bauer*, 25 F.4th at 589 (explaining that a court considers only nonconclusory

allegations as true for the purposes of ruling on a motion to dismiss pursuant to Rule 12(b)(6)).

The same is true of an allegation of a representation that claims would be paid as arising from

partial payment of one or a few claims. Filing 50-1 at 13–14 (¶ 30). Furthermore, the proposed

Second Amended Complaint offers no more than conclusory allegations of "falsity" or

"incorrectness" with no plausible factual basis. *Id.*

As to the "reliance" element, although reliance on representations made "indirectly"—

that is, representations not made directly to the plaintiff by the defendant—may be the basis for a

misrepresentation claim, *Kaufman*, 754 A.2d at 1195, the representation in question must be

adequately alleged. It is not adequately alleged here. The tenuous allegations of any

representation also undermine any inference that Abira's reliance on the purported representation

as the basis for expecting payment was "justified" or "reasonable." *See H. Rosenblum*, 461 A.2d

at 142 (explaining that negligent misrepresentation requires proof that the plaintiff "justifiably

relied" on the representation); *Gennari*, 691 A.2d at 367 (explaining that fraudulent

misrepresentation requires proof that the plaintiff's reliance on the representation was

"reasonable").

Consequently, Count 3 of the proposed Second Amended Complaint is futile to the extent

it attempts to allege fraudulent or negligent misrepresentation, and leave to amend to assert such

claims is denied. *See Midwest Med. Sols.*, 95 F.4th at 606–07 (identifying "futility" as a ground

to deny leave to amend); *Mt. Hawley Ins. Co.*, 92 F.4th at 769 ("An amendment is futile if the

amended claim could not withstand a motion to dismiss under Rule 12(b)(6)." (quoting

*Hillesheim*, 897 F.3d at 955)). This determination "operates as a ruling on the merits of the proposed [misrepresentation] claim[s]." *Kezhaya*, 78 F.4th at 1051.

              d.   The Estoppel Claims Do Not Plead Sufficient Facts to State Claims

Abira also addresses together the sufficiency of its claims of promissory estoppel and equitable estoppel in Count 3 of the proposed Second Amended Complaint. Filing 51 at 19–21. Although Mutual of Omaha addresses these two estoppel claims separately, it does so concisely. Filing 55 at 5–6. Thus, the Court finds that it can assess the two estoppel claims together.

Abira cites the elements of promissory estoppel and the explanation of a promise reasonably inducing action or forbearance from *Restatement (Second) of Contract* § 90. Filing 51 at 19–20. Abira then states baldly, "The Court should hold that Defendant is subject to promissory estoppel as to the non-payment of laboratory services rendered by Abira." Filing 51 at 20. Next, Abira sets out requirements of equitable estoppel. Filing 51 at 20. Abira then argues, "While the court typically won't permit a party to affirmative [sic] claim equitable estoppel, there are causes [sic] where [a] plaintiff can raise the claim in order to bar dismissal due to the Defendant's course of conduct." Filing 51 at 21. The remainder of Abira's argument in support of these claims is the following:

> Alternatively, Abira has pled claims of the doctrine of equitable estoppel to prevent Defendant from realizing an unjustified windfall by inducing Plaintiff to continue providing healthcare services. Based on Defendant's extended course of conduct, Plaintiff had every reason to objectively and reasonably believe that it would be compensated by Defendant for services it rendered to Defendant's insureds/members/subscribers.

Filing 55 at 21. Mutual of Omaha's response concerning the "promissory estoppel" claim is that "promissory estoppel is not available where the claim is governed by contract," and that "Abira fails to allege Mutual of Omaha made a clear and definite promise to Abira, nor [sic] that Abira

relied on a promise." Filing 55 at 6. Mutual of Omaha's argument concerning "equitable estoppel" is even more concise: "Equitable estoppel is not an affirmative claim for relief." Filing 55 at 6.

The United States District Court for the District of New Jersey has repeatedly stated, "Promissory estoppel claims are 'unavailable when a valid contract exists' and 'subject to dismiss[al] to the extent they arise from an implied promise concerning the same subject matter as an indisputably valid contract." *See, e.g., Gumba v. LeafFilter N. of New Jersey, LLC*, No. CV231979GCDEA, 2024 WL 378698, at *13 (D.N.J. Feb. 1, 2024) (quoting *Golden State Med. Supply Inc. v. AustarPharma LLC*, Civ. No. 21-17137, 2022 WL 2358423, at *5 (D.N.J. Jun. 30, 2022)). The Court understands Mutual of Omaha to assert that there is no proof of a contract between Abira and Mutual of Omaha, so the Court cannot conclude as a matter of law that a "valid" or "indisputably valid" contract exists that requires dismissal of the promissory estoppel claim at this time. *See N.Y.-Conn. Dev. Corp. v. Blinds-To-Go (U.S.) Inc.*, 159 A.3d 892, 901-02 (N.J. Super. Ct. App. Div. 2017) (explaining that once a jury finds that there was an enforceable contract, the plaintiff would not have been entitled to recover damages under a quasi-contract theory, in that case, quantum meruit).

On the other hand, Mutual of Omaha is entirely correct that there is no plausible allegation of a clear and definite promise or Abira's reliance on such a promise, as required to establish promissory estoppel. *See In re Att'y Gen. L. Enf't Directive Nos. 2020-5 & 2020-6*, 252 A.3d at 155–56 (explaining that promissory estoppel requires *inter alia* "a clear and definite promise" and "reasonable reliance" (quoting *Goldfarb*, 245 A.3d. at 577)). For the same reasons the Court found no sufficient allegations of a representation or justified or reasonable reliance to

35

state a claim of fraudulent or negligent misrepresentation above in § II.C.3.c., the Court finds no sufficient allegations of a "clear and definite promise" or "reasonable reliance" to state a claim of promissory estoppel.

The Court will assume for the sake of argument that "equitable estoppel" can be used for the purposes that Abira argues it has raised that doctrine. Even so, "equitable estoppel" requires *inter alia* "a knowing and intentional misrepresentation by the party sought to be estopped" and "reliance by the party seeking estoppel to his or her detriment." *In re Att'y Gen. L. Enf't Directive Nos. 2020-5 & 2020-6*, 252 A.3d at 156. Again, for the same reasons the Court found no sufficient allegations of a representation or justified or reasonable reliance to state a claim of fraudulent or negligent misrepresentation above in § II.C.3.c., the Court finds no sufficient allegations of "a knowing and intentional misrepresentation by the party sought to be estopped" or "reliance by the party seeking estoppel to his or her detriment" to state a claim of equitable estoppel.

Consequently, Count 3 of the proposed Second Amended Complaint is futile to the extent it attempts to allege promissory estoppel or equitable estoppel, and leave to amend to assert such claims is denied. *See Midwest Med. Sols.*, 95 F.4th at 606–07 (identifying "futility" as a ground to deny leave to amend); *Mt. Hawley Ins. Co.*, 92 F.4th at 769 ("An amendment is futile if the amended claim could not withstand a motion to dismiss under Rule 12(b)(6)." (quoting *Hillesheim*, 897 F.3d at 955)). This determination "operates as a ruling on the merits of the proposed [estoppel] claim[s]." *Kezhaya*, 78 F.4th at 1051.

### 4. The Quantum Meruit/Unjust Enrichment Claim in Count 4

#### a. The Allegations

In addition to the factual allegations set out in the factual background in § I.B., Count 4 of the proposed Second Amended Complaint includes the following allegations concerning Abira's claim of quantum meruit/unjust enrichment:

> 37.    In performing Laboratory Testing Services for Defendant's insureds, subscribers and/or members listed in Exhibit 1, for which Defendant did not pay, or paid at amounts far below those required by Defendant's own policies and protocols, Plaintiff conferred a benefit upon Defendant's subscribers and/or members and, therefore, upon the Defendant.

> 38.    Defendant has enriched itself at Plaintiff's expense by failing and refusing to compensate Plaintiff for providing Laboratory Testing Services to Defendant's subscribers and/or members, and instead Defendant is using those funds for Defendant's own purposes.

> 39.    It is against equity and good conscience to permit Defendant to retain the money it intentionally and wrongfully failed to pay to Plaintiff.

Filing 50-1 at 15–16 (¶¶ 37–39). The proposed Second Amended Complaint alleges further that Abira is entitled under these circumstances to recover all funds it is owed for providing testing services to the insureds listed in Exhibit 1 in the amount of "not less than $108,500 plus interest." Filing 50-1 at 16 (¶¶ 40–41).

#### b. The Parties' Arguments

Abira argues that it has adequately pleaded a quantum meruit/unjust enrichment claim. Filing 51 at 22. Abira argues that, contrary to Mutual of Omaha's contentions, courts have held that a benefit is "conferred" on an insurer when the insurer fails to pay a healthcare provider for services rendered to the insured. Filing 51 at 22. Thus, Abira argues that it had a reasonable expectation of payment by Mutual of Omaha for laboratory services that it rendered but for which Mutual of Omaha has not paid. Filing 51 at 23. Abira argues that Mutual of Omaha had an

obligation to pay it for testing services it provided to Mutual of Omaha's insureds but Mutual of Omaha has not paid for those services. Filing 51 at 23. Therefore, Abira argues, Mutual of Omaha has been improperly enriched and Mutual of Omaha's receipt of the benefit without payment to Abira would be unjust. Filing 51 at 23.

Mutual of Omaha argues that Abira's quantum meruit/unjust enrichment claim is duplicative of Abira's breach-of-contract claim. Filing 55 at 6. Mutual of Omaha argues that where the quantum meruit/unjust enrichment claim is based on the same facts as the breach-of-contract claim, as is the case here, the quantum meruit/unjust enrichment claim fails to state a claim because the underlying rights are based on contract. Filing 55 at 7.

c.   The Quantum Meruit/Unjust Enrichment Claim Impermissibly Duplicates the Breach-of-Contract Claim

The United States District Court for the District of New Jersey has observed, "Quantum meruit and unjust enrichment are often pleaded as separate claims, but they are similar, and both fall under the umbrella of quasi-contract." *Durr Mech. Constr., Inc. v. PSEG Fossil, LLC*, 516 F. Supp. 3d 407, 416 (D.N.J. 2021). More specifically, the New Jersey Supreme Court has explained,

>   To recover under a theory of quantum meruit, a plaintiff must establish: "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Longo v. Shore & Reich, Ltd.*, 25 F.3d 94, 98 (2d Cir. 1994) (internal quotations and citations omitted); *accord Weichert Co. Realtors, Ltd., supra*, 128 N.J. at 437–38, 608 A.2d 280. I

*Starkey, Kelly, Blaney & White v. Est. of Nicolaysen*, 796 A.2d 238, 242–43 (N.J. 2002). More recently, the New Jersey Supreme Court has explained,

>   To prove a claim for unjust enrichment, a party must demonstrate that the opposing party "received a benefit and that retention of that benefit without

payment would be unjust." *Iliadis v. Wal–Mart Stores, Inc.*, 191 N.J. 88, 110, 922 A.2d 710 (2007) (quoting *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554, 641 A.2d 519 (1994)). "That quasi-contract doctrine also 'requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights.'" *Ibid.* (quoting *VRG Corp., supra*, 135 N.J. at 554, 641 A.2d 519).

*Thieme v. Aucoin-Thieme*, 151 A.3d 545, 557 (N.J. 2016). "[T]heories of quasi-contract and quantum meruit are not based on the actual intent of the parties, but 'are arbitrarily imposed by the court to prevent an unjust enrichment.'" *Carr v. Carr*, 576 A.2d 872, 880 (N.J. 1990) (quoting *Coney v. Coney*, 503 A.2d 912, 918 (N.J. Super. Ch. Div. 1985)).

Abira's argument that the quantum meruit/unjust enrichment claim is adequate is based on a decision of the Third Circuit Court of Appeals that addressed the "benefit conferred" requirement. Filing 51 at 22. In *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.,* 967 F.3d 218, (3d Cir. 2020), in a case by a healthcare provider against an insurance company, the Third Circuit held that "the benefit conferred, if any, is not the provision of the healthcare services *per se*, but rather the discharge of the obligation the insurer owes to its insured." *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.,* 967 F.3d 218, 240 (3d Cir. 2020). The Third Circuit continued,

> As New Jersey's highest court observed long before the advent of ERISA, the essence of an unjust enrichment cause of action against an insurer is that "the [insurer] is under a legal duty to provide the person injured with medical or surgical attendance," and "the physician ... dutifully intervene[d] in the [insurer's] affairs and perform[ed] its obligation." *Rabinowitz v. Mass. Bonding & Ins. Co.*, 119 N.J.L. 552, 197 A. 44, 47 (1938) (citation omitted). And the Center's own complaint—describing the benefits at issue as "permitting Aetna to fulfill its contractual obligation to D.W. to pay for medically necessary surgeries," JA 61, and allowing Aetna to "fulfill[ ] [its] contractual obligation to J.L.," JA 204—makes plain that this is its theory.

*Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co*., 967 F.3d 218, 240–41 (3d Cir. 2020).

In the case before this Court, Abira has similarly alleged, "In performing Laboratory Testing Services for Defendant's insureds, subscribers and/or members listed in Exhibit 1, for which Defendant did not pay, or paid at amounts far below those required by Defendant's own policies and protocols, Plaintiff conferred a benefit upon Defendant's subscribers and/or members and, therefore, upon the Defendant." Filing 50-1 at 15–16 (¶ 37). Thus, Abira has attempted to allege that it conferred the same kind of benefit on Mutual of Omaha that the Third Circuit found in *Plastic Surgery Center*. The problem with Abira's allegation is that it is wholly conclusory where there are no allegations from which the Court could plausibly infer that Mutual of Omaha had an obligation to pay for testing services provided to its insureds in the absence of any statement of the terms of the insurance policies or the "policies and protocols" to which Abira refers. *See DeCastro*, 2024 WL 3352968, at *2 ("'[F]actual' matter [accepted as true to determine whether a proposed amendment can withstand a Rule 12(b)(6) motion] does not include 'labels . . . or a formulaic recitation of the elements of a cause of action,' 'naked assertion[s] of claims,' or legal conclusions 'couched as' facts." (quoting *Iqbal*, 556 U.S. at 678)).

More importantly, the crux of Mutual of Omaha's argument is not whether a benefit was conferred, but whether the quasi-contract claims are entirely duplicative of the breach-of-contract claim. Filing 55 at 6-7. Under New Jersey law, such claims may sometimes be pleaded in the alternative to breach-of-contract claims. *See, e.g.*, *JJD Elec., LLC v. SunPower Corp., Sys.*, No. CV 22-1275 (KMW/MJS), 2024 WL 3219294, at *10 (D.N.J. June 28, 2024). However, "[w]here the quasi-contract claim is truly just the contract claim by another name, [courts] might dismiss it as superfluous." *Durr Mech. Constr., Inc.*, 516 F. Supp. 3d at 416. Where the quasi-

contract claim seeks to recover for something beyond what the contract provides, it may survive. *Id.* Unpublished decisions of the United States District Court for the District of New Jersey confirm these principles. *See, e.g.*, *Gebhardt v. Beri*, No. CV 23-3008-JKS-AME, 2024 WL 3279531, at *9 (D.N.J. June 14, 2024) ("Plaintiff alleges Beri and Australian Boutique have been 'unjustly enriched at Plaintiff's expense' by failing to pay 'what [they] owe him under the Promissory Note and Personal Guaranty.' (Id. ¶ 51.) Gebhardt's unjust enrichment claim is duplicative of his breach of contract claim against Beri and therefore fails to state a claim upon which relief may be granted."), *report and recommendation adopted*, No. CV 23-3008 (JKS) (AME), 2024 WL 3290470 (D.N.J. July 2, 2024); *Ohm Sys., Inc. v. Senergen Solutions, LLC*, No. 23-1340, 2023 WL 8437279, at *2-3 (D.N.J. Dec. 5, 2023) (dismissing unjust enrichment claim pursuant to Rule 12(b)(6) because it was based on the defendants' alleged failure to pay under the parties' agreement, which was the same conduct giving rise to the breach of contract claim); *Gujja v. Inpatient Servs. of New Jersey, P.C.*, No. CV2119416MASDEA, 2022 WL 2834998, at *3 (D.N.J. July 20, 2022) ("Although pleading in the alternative is permissible under Rule 8(d)(2), courts in this District regularly dismiss unjust enrichment claims that are duplicative of a complaint's breach of contract claims when the governing agreement is undisputed.").

Abira overlooks a similar lesson from the Third Circuit decision it cited. In *Plastic Surgery Center*, the Court said, "What [the plaintiff] fails to appreciate, however, is that in the modern era, when the insured is a plan participant, the 'contractual obligation' is none other than the insurer's duty to its insured *under the terms of the ERISA plan*." *Plastic Surgery Ctr., P.A.*, 967 F.3d at 241 (emphasis in the original). The Third Circuit contrasted the breach-of-contract

41

claim and the promissory estoppel claims before it that sought to enforce a promise of payment "independent of any plan-based obligation" with the unjust enrichment claims that required the court to find that a plan existed in order to demonstrate that the insurer received a benefit in the discharge of its duties to the plan participant and that its retention of that benefit was unjust. *Id.* The Third Circuit explained, "[B]ecause the benefit involves a plan-based duty, there simply is *no* cause of action [for unjust enrichment] if there is no plan," and "[t]his claim is thus squarely preempted by [ERISA]." *Id.* at 242 (internal quotation marks and citations omitted; emphasis in the original).

Likewise, here, if the benefit involves only an insurance policy-based duty, there is no cause of action for quasi-contract if there is no insurance policy, and the quasi-contract claims are duplicative of—and essentially "preempted" by—the breach-of-contract claim. *Id.*; *see also Durr Mech. Constr., Inc.*, 516 F. Supp. 3d at 416; *Gebhardt*, 2024 WL 3279531, at *9; *Ohm Sys., Inc.*, 2023 WL 8437279, at *2-3; *Gujja*, 2022 WL 2834998, at *3. Nothing in the allegations in Count 4 of the proposed Second Amended Complaint expressly or implicitly suggests that any additional conduct not covered by the terms of the insurance policies is the basis for the quantum meruit/unjust enrichment claim as compared to the breach-of-contract claim. *Durr Mech. Constr., Inc.*, 516 F. Supp. 3d at 416. Thus, this is a case "[w]here the quasi-contract claim is truly just the contract claim by another name," so it is proper to "dismiss it as superfluous." *Id.*

Consequently, Count 4 of the proposed Second Amended Complaint is futile to the extent it attempts to allege a quantum meruit/unjust enrichment claim, and leave to amend to assert such a claim is denied. *See Midwest Med. Sols.*, 95 F.4th at 606–07 (identifying "futility" as a ground to deny leave to amend); *Mt. Hawley Ins. Co.*, 92 F.4th at 769 ("An amendment is futile if the

amended claim could not withstand a motion to dismiss under Rule 12(b)(6)." (quoting *Hillesheim*, 897 F.3d at 955)). This determination "operates as a ruling on the merits of the proposed [quantum meruit/unjust enrichment] claim[s]." *Kezhaya*, 78 F.4th at 1051.

### 5. Remaining Issues

Abira argues that it has "properly pled bad faith" as the last substantive part of its briefs. Filing 51 at 23–24. However, this argument is wholly inapposite because the proposed Second Amended Complaint does not allege a bad faith claim and does not even mention bad faith. *See generally* Filing 50-1 at 4–19. Indeed, the proposed Second Amended Complaint does not mention good faith apart from its claim of breach of the implied covenant of good faith and fair dealing. Filing 50-1 at 11 (Count 2).

Mutual of Omaha argues that the proposed Second Amended Complaint is also deficient in attempting to seek punitive damages and attorney's fees. Filing 55 at 7–8. The Court need not reach these arguments where it has found the substantive claims are futile. Similarly, the Court need not address Mutual of Omaha's argument that further amendment is not in the interest of justice if the Court finds the proposed Second Amended Complaint is futile and also dismisses the prior Amended Complaint for failure to state claims upon which relief can be granted. The Court has already determined above in § II.A. that Abira has failed to defend and thus waived or abandoned its Amended Complaint in its briefs. Thus, if the Court denies Abira's Cross-Motion to Amend on the ground that the proposed amendment is futile, Abira cannot attempt to revive any part of its Amended Complaint. That is the situation that now exists, so dismissal of this action is appropriate without the need to entertain further briefing on Mutual of Omaha's Motion to Dismiss. As also stated in § II.A. above, no further leave to amend will be granted.

### III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that

1.    Abira's Cross-Motion to [File] Second Amendment to the Complaint (Cross-Motion to Amend), Filing 50, is denied;

2.    Abira's Amended Complaint is dismissed because Abira has waived all claims in that pleading; and

3.    The case is dismissed in its entirety without leave to attempt further amendment.

Dated this 5th day of September, 2024.

BY THE COURT:

_____

Brian C. Buescher
United States District Judge